IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEPHANIE M. BLACKMON,
        Plaintiff,

v.                                   Case No.: 3:12cv588/RS/EMT

ESCAMBIA COUNTY SCHOOL BOARD,
        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Stephanie M. Blackmon ("Plaintiff") proceeds pro se and in forma pauperis in this employment discrimination action against her former employer Defendant Escambia County School Board ("Defendant" or "ECSB"). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). Now before the court is Defendant's motion for summary judgment, to which Plaintiff has responded.[1] As set forth below, the court recommends that Defendant's motion for summary judgment be granted.

I.      PROCEDURAL HISTORY

Plaintiff—who is black and female—filed a complaint against Defendant with the Equal Employment Opportunity Commission ("EEOC") in August 2012 alleging racial and sex

---

[1] *See* Defendant's filings: doc. 35, motion for summary judgment; doc. 36, memorandum in support of motion; doc. 37, exhibits in support of motion; doc. 39, statement of material facts not in dispute; and docs. 60 and 61, depositions taken by Plaintiff and filed by Defendant. *See also* Plaintiff's filings: doc. 58, initial response in opposition to motion for summary judgment; doc. 68, amended response in opposition to motion; and doc. 69, exhibits in support of response in opposition to motion.

discrimination (doc. 1 at 9).[2]   On October 1, 2012, the EEOC dismissed Plaintiff's complaint, closing its file and giving her notice of her right to bring suit in federal court (*id.* at 8).  This action timely followed by Plaintiff's filing a complaint in this court on December 13, 2012.   In her amended complaint, filed August 12, 2013, Plaintiff alleges that Defendant violated various provisions of federal and state law when it refused to hire her as a school bus operator in January 2012 and prevented her from being hired in that capacity by the Jacqueline Harris Preparatory Academy ("JHPA") in August 2012 (doc. 29).   Plaintiff identifies the following counts in her amended complaint:  (I) race discrimination pursuant Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; (II) intentional discrimination pursuant to 42 U.S.C. § 1981; (III) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1983 & § 1985; (IV) retaliation pursuant to Title VII; (V) slander and defamation pursuant to state law; and (VI) harassment pursuant to 18 U.S.C. § 1514(c) (*id.* at 4).[3]   As relief, Plaintiff seeks an injunction, monetary damages, and attorneys' fees and costs.

Defendant moved for judgment on the pleadings and/or for summary judgment (doc. 35). The court informed the parties that it would treat the motion as one for summary judgment, advised them of the importance and ramifications of summary judgment consideration, and provided them with information as to the requirements for materials submitted for review pursuant to Rule 56 (doc. 38).  Additional papers having now been filed, including Plaintiff's amended response in opposition to the motion for summary judgment which was submitted on November 25, 2013, and this matter is ripe for review.[4]

---

[2]  The page numbers in this Report and Recommendation are the numbers assigned by the court's electronic docketing system, rather than the page numbers or exhibit references the parties may have designated.

[3]  In her amended complaint Plaintiff does not present factual allegations or specific claims regarding discrimination based on gender, although she raised such claims in her EEOC complaint.  Thus, in this action the court addresses only Plaintiff's race discrimination claims.

[4]  Plaintiff attached exhibits to her initial response to the motion for summary judgment (doc. 58) which she did not attach to amended response (doc. 68), although she refers to the exhibits in the amended response. The initial response is superceded by the amended response, and therefore the court does not consider it.
     Nevertheless, the court has examined all of the exhibits attached to the initial response, and it has taken into consideration information contained therein that is material and relevant to Plaintiff's claims.  These exhibits include the affidavit of Terry McKnight ("Mr. McKnight"), ECSB's Transportation Department safety training manager (doc. 58 at 12–14; duplicated at doc. 37-1); Defendant's Response to Plaintiff's First Amended Request for Production Received June 17, 2013 (*id.* at 15–18); Plaintiff's September 6, 2012, "official complaint" of racial discrimination

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original).  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  A fact is "material" if it may affect the outcome of the case under the applicable substantive law.  *See id.*

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings.  Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial.  Fed. R. Civ. P. 56(e).  In assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party.  *See* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment.  *See* Walker

---

submitted to ECSB (*id.* at 19–21); Defendant's Response to Plaintiff's First Interrogatories (*id.* at 22–24); ECSB Transportation Department Personal Data Sheet dated January 4, 2011 (*id.* at 25); ECSB Personnel Data Change Form (*id.* at 26) [this form is illegible]; ECSB Temporary Employment Agreement signed by Plaintiff on January 4, 2011 (*id.* at 27); ECSB letter from EEOC officer Horace A. Jones to Plaintiff stating he found no evidence to support Plaintiff's claims of racial discrimination, retaliation, slander, or defamation of character (*id.* at 28); documents related to Plaintiff's EEOC complaint (*id.* at 29–31); ECSB Transportation Department Personal Data Sheet dated October 5, 2009 (*id.* at 32); ECSB employment information for Plaintiff (*id.* at 33); ECSB Personnel Data Change Form dated January 17, 2012 (*id.* at 34); and copies of Florida statutes (*id.* at 35–37).  Also, the court has examined the attachments to Plaintiff's amended response, which include general information or legislation related to workplace discrimination (doc. 68 at 20–41), and Plaintiff's affidavit (*id.* at 42–43).  The court has also reviewed—and considered to the extent appropriate, as explained previously—the depositions (with any attached exhibits) submitted by Plaintiff.  These include depositions from ECSB human resources officer Felita Hill ("Ms. Hill") (doc. 69-1); transportation route manager Patricia Drew ("Ms. Drew") (doc. 69-2); transportation route manager Pam McKnight ("Mrs. McKnight") [who also is married to Terry McKnight] (doc. 69-3); and JHPA office manager Cindy Andrews ("Ms. Andrews") (doc. 69-4).

Case No.: 3:12cv588/RS/EMT

v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

III.   MATERIAL FACTS[5]

At summary judgment the court construes pro se pleadings more liberally than those of represented parties. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002). Additionally, as this case comes before the court on Defendant's motion for summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-movant, see Hairston, 9 F.3d at 918, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997). The material facts of this matter are outlined below and, except as may be noted, are undisputed.

ECSB first employed Plaintiff in 2006 to work as a substitute school bus operator (doc. 37-2 at 17). ECSB requires its new bus drivers to undergo forty hours of training, which it provides at no expense to the drivers (doc. 37-1 at 1). Plaintiff successfully completed the training, but after doing so she decided not to accept the position ECSB had offered her (doc. 37-2 at 17–20). She could not recall why she did not take the job (id. at 20).

Plaintiff again applied for employment as a school bus operator with ECSB in March 2009 (doc. 37-6 at 2, 3, 4). Plaintiff was required to complete bus driver training again, which she did (see doc. 37-2 at 28), and she commenced work as a substitute school bus driver when the school year started in August 2009 (id. at 26–27). Plaintiff was given a "hold-down route," which is a route a substitute driver performs on an extended basis for the regular driver who is not available to work (id. at 27). Plaintiff testified that she left the job sometime before December 2009 because she was not feeling well (id. at 31–32). Plaintiff informed ECSB that she had to stop driving due to illness but did not tell ECSB that she intended to quit her position or would not be returning to work (id. at 33, 41, 43). Plaintiff insists that she never resigned or quit; rather, she simply decided to take

---

[5] Plaintiff signed her amended complaint under penalty of perjury (doc. 29 at 11). Therefore, as appropriate, the court has relied on the factual allegations in the amended complaint. See Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986); see also 28 U.S.C. § 1746 (setting forth requirements for unsworn declarations under penalty of perjury); Shaw v. Cowart, 300 F. App'x 640, 645 (11th Cir. 2008) (unpublished) ("Facts alleged by the plaintiff in a sworn pleading" must be considered in opposition to summary judgment).

"unavailable to work" status, which, she says, "[t]here is nothing wrong with" (*id.* at 40).

In December 2009, Plaintiff applied for work as a driver with the Escambia County Transit Authority ("ECAT") (doc. 37-2 at 30–31). As part of the application process, Plaintiff authorized ECAT to request employment verification from ECSB (*id.* at 29). ECSB completed a verification form for Plaintiff that indicated the dates of her employment and also that Plaintiff was not eligible for rehire because she "ha[d] quit twice" (doc. 37-6 at 19). ECAT hired Plaintiff, but she only worked for ECAT for three to four weeks before quitting because she was assigned to drive a trolley, rather than a bus as she had expected, and she did not feel safe working her scheduled hours (doc. 37-2 at 36–37). Following her job at ECAT, Plaintiff was hired to perform clean-up work on Pensacola Beach after the Deepwater Horizon oil spill in April 2010, a job she performed for several months (*id.* at 44).

In January 2011 Plaintiff again sought employment with ECSB as a substitute school bus operator (doc. 37-7). Plaintiff describes her request for employment as "put[ting] [her]self back on the availability list" (doc. 37-2 at 45) or once more "[making] [her]self available for work" (*id.* at 46). Despite having previously indicated that Plaintiff was not eligible for rehire, ECSB hired Plaintiff. She worked through June 2011, the end of the school year, as a substitute bus driver on a hold-down route (*id.* 46–47).

School bus operators do not work during student summer vacation (doc. 37-1 at 1). At the start of the 2011/2012 school year Plaintiff sought work with ECSB as a substitute bus driver but "Camelot" was the only available route offered to her (doc. 37-2 at 50). Plaintiff declined the Camelot route, stating that it was "too rough" for her due to "a lot of challenges with the students" (*id.* at 51). Another female, black driver accepted the route (*id.*; *see also* doc. 68 at 42–43). Plaintiff chose to remain "on call" (*id.* at 52), or on "stand by" status, with ECSB as well as the firm that had previously hired her to perform oil clean-up work; "it was just a matter of who offered [her] a position first and the oil spill [contractor] did" (*id.* at 57). While working for the oil spill clean-up contractor, Plaintiff knew that someone from the ECSB Transportation Department—probably Mrs. McKnight—called her several times, likely to offer her employment as a substitute school bus driver, but Plaintiff did not answer the calls because she was at work; Plaintiff also did not return the calls because she did not consider herself to be "available" to work as a substitute bus driver at

that time (*id.* at 58–60).

In January of 2012 Plaintiff decided to make herself "available" to work as a substitute school bus operator and appeared at the ECSB transportation department offices to so advise (*id.* at 60, 62). When Plaintiff informed Mr. McKnight of her availability (*id.* at 62), he asked her to wait a moment in his office (*id.* at 63). He left, and when he returned he told Plaintiff that he had "talked to the ladies in the office[6] about [Plaintiff]" and although ECSB needed school bus operators "what we're looking for are reliable bus drivers and you are not reliable" (*id.*). Mr. McKnight informed Plaintiff that he would not permit her to return to employment as a substitute school bus driver for ECSB (doc. 37-1 at 1).

In August 2012, Plaintiff applied for employment as a school bus operator at JHPA, a school chartered by ECSB (doc. 37-2 at 65). JHPA's transportation department is under the auspices of ECSB's Transportation Department, which trains and qualifies all charter school bus operators (doc. 37-1 at 2–3). Plaintiff did not know at the time she applied for employment with JHPA that its student transportation was provided by bus drivers trained by the ECSB (doc. 37-2 at 65, 72). JHPA, through its office manager Ms. Andrews, and ECSB, through Mr. McKnight, communicated regarding Plaintiff's JHPA employment application. Mr. McKnight told Ms. Andrews that Plaintiff was an unreliable employee (*id.* at 67; docs. 37-1; 37-7 at 10; 69-4 at 7). JHPA did not hire Plaintiff to work as a school bus driver.[7]

---

[6] Plaintiff identifies the women as Mrs. McKnight, Ms. Drew, Sharon Ball ("Ms. Ball"), and Janine Singleton Walker ("Ms. Walker") (doc. 68 at 6; doc. 29 at 5), all of whom, Plaintiff states, are white (doc. 29 at 5–6).

[7] The parties allege numerous facts that the court has not included in this outline, including facts that stray into the territory of legal arguments or conclusions and facts that may be disputed but are not material. In the former category, and thus excluded from this outline, is Defendant's mention in its statement of facts that Plaintiff acknowledged in her deposition that the evidence in support of her claims consists only of two matters: (1) that Mr. McKnight and the "ladies in the office" are white and Plaintiff is black and (2) that Plaintiff overheard a white man state at an ECSB transportation meeting that the Camelot route had been given to "the two black girls" (*see* doc. 39 at 5–7).

Also excluded from the court's outline of the statement of facts are "contradictions" in the evidence cited by Plaintiff because, although the facts may be disputed, they are not material. These facts include whether it was Mr. McKnight or Ms. Andrews who initiated the August 2012 phone call in which they discussed Plaintiff; whether, during that call, in addition to describing Plaintiff as "unreliable," Mr. McKnight further stated to Ms. Andrews words to the effect that Plaintiff had "walk[ed] out on three route managers" and "'we don't want her here'"; whether Mr. McKnight, when speaking to Plaintiff in August 2012, also told Plaintiff that any future applications for school bus employment in Escambia County would have to go through ECSB; specifically how long Plaintiff actually worked for ECSB; and whether Plaintiff "quit" working for ECSB or just became "unavailable" to work on several occasions, none of which occasions were contrary to ECSB policy or related to unsatisfactory job performance (*see* doc. 68 at 5–9, citing doc. 69-

IV.    DISCUSSION

The court first considers Count I (the first of Plaintiff's two Title VII claims) and Count II (her claim under § 1981).[8]  Title VII and § 1981 "have the same requirements of proof and use the same analytical framework."  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985) (indicating that for disparate treatment claims under both Title VII and § 1981, "the legal elements of the claims are identical" such that the two categories of claims need not be discussed separately); Pears v. Mobile County, 645 F. Supp. 2d 1062, 1089 (S.D. Ala. 2009) (stating that "[b]ecause the legal standards governing each of these categories of claims are the same, it is unnecessary to evaluate separately the Title VII . . . and the Section 1981 causes of action.").

Under 42 U.S.C. § 1981, all citizens shall have the same right to "make and enforce contracts" without the impediment of racial discrimination.  Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ."  42 U.S.C. § 2000e–2(a)(1).  Under Title VII, a plaintiff bears "the ultimate burden of proving discriminatory treatment by a preponderance of the evidence."  Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008) (internal quotation marks and citation omitted).  A plaintiff may establish a claim of unlawful disparate treatment through either direct or circumstantial evidence.  Id. at 975–76.  Where, as in this case, a party seeks to establish discrimination through circumstantial evidence, the court evaluates the claim under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  See id.  Under this framework, the plaintiff bears the threshold

---

4, doc. 58 at 12–14, 15–16, 20, 23–24, and doc. 69-1; see also doc. 29 at 5).  Even when viewed in the light most favorable to Plaintiff, these facts do not alter the court's conclusion that Plaintiff has not shown that on the basis of her race ECSB discriminated, conspired, or retaliated against her.

[8]  Section 1981 does not provide a cause of action against state actors.  Jett v. Dallas Independent School District, 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (holding plaintiff must use the remedial provisions of § 1983 to enforce against state actors the rights created by § 1981).  Rather, § 1983 "constitutes the exclusive federal remedy for violation of state actors of the rights guaranteed under § 1981."  Bryant v. Jones, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing Butts v. County of Volusia, 222 F.3d 891, 894–95 (11th Cir. 2000)).  ECSB is a state actor, and thus § 1981 by itself provides no cause of action against ECSB.  Especially in light of Plaintiff's pro se status, however, the court treats Plaintiff's § 1981 claim as proceeding under § 1983, which section Plaintiff invokes in her amended complaint (albeit in connection with her conspiracy claim (see doc. 29 at 4)).

burden of establishing a prima facie case of discrimination. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its action. McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008). If the employer does so, the employee must then show that the employer's stated reasons are a pretext for unlawful discrimination. *Id.* The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).

In general, a plaintiff establishes a prima facie case of race discrimination by showing that: (1) she is a member of a racial minority; (2) she suffered an adverse employment action; (3) the employer treated similarly situated employees outside her racial minority more favorably; and (4) she was qualified for her employment. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). More specific to a traditional claim of failure to hire, for a prima facie case the plaintiff may show that: "(1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002) (citation omitted).

Here, Plaintiff can establish that she is a member of a protected class and that she applied for employment as a substitute school bus operator and was twice rejected. Both times Plaintiff's rejection was based on Defendant's determination, as expressed by Mr. McKnight, that Plaintiff's employment history with ECSB had shown her to be an unreliable worker or, in other words, that she was not qualified to be hired by ECSB. "For purposes of establishing a prima facie case, the plaintiff[ ] need only show [her] objective qualifications for the job." Legrand v. Trustees of Univ. of Ark. at Pine Bluff, 821 F.2d 478, 481 (8th Cir. 1987) (concluding that at prima facie stage, court should not consider subjective assessments of employee's qualifications, such as reliability); Lynn v. Regents of the Univ. of Cal., 656 F.2d 1337, 1344–45 (9th Cir. 1981) (for prima facie case, plaintiff need only prove objective job qualifications; subjective judgments of relative qualifications should be established by employer at step two of McDonnell Douglas Corp. analysis). Thus the court will assume that for the purpose of her prima facie case Plaintiff can establish she was

qualified for the position of bus driver. Nevertheless, even though Plaintiff may be able to establish three elements of the prima facie case, she has not established the fourth: Plaintiff has come forward with no evidence that ECSB (or JHPA) filled the school bus operator positions for which Plaintiff applied with individuals from outside her protected class or that the positions remained open. Plaintiff has not shown that Defendant treated similarly situated employees who were not black more favorably than it treated her. Thus, Plaintiff has failed to establish a prima facie case of failure to hire.

Moreover, assuming *arguendo*, that Plaintiff had established a prima facie case, the court concludes that Defendant has articulated a nondiscriminatory reason for refusing to employ Plaintiff as a school bus operator in January 2012 or endorse her employment by JHPA in August 2012. Mr. McKnight states that ECSB "has a need to know that those who are on the substitute school bus operator list are reasonably available to work as needed" (doc. 37-1 at 2). Plaintiff's work history with ECSB reflects that she often was not reasonably available to work. Although Plaintiff completed bus driver training in 2006, at ECSB's expense, she decided not to take the job for which she had been hired and trained. Also, in 2009, after Plaintiff had again undergone bus driver training by ECSB and driven a route for number of months, she advised Defendant that she had to stop working because she did not feel well. Thus, although it may have been illness—an event beyond Plaintiff's control—that kept Plaintiff from working at that time, she nevertheless was "unavailable" to work for ECSB. More importantly, when Plaintiff was well enough to work, without informing ECSB that she did not intend to return to work for it, she accepted a job with ECAT, a choice which continued to make her "unavailable" to work for ECSB. After Plaintiff left ECAT, for several months she did oil spill clean-up work on Pensacola Beach, which likewise rendered her "unavailable" to work for ECSB. Plaintiff made herself available and worked for ECSB from January 2011 through the end of the school year in June 2011. The next fall, however, Plaintiff accepted work with an oil spill clean-up contractor, thereby again becoming "unavailable" to ECSB.[9] Moreover, while employed with the oil spill clean-up contractor in the fall of 2011, Plaintiff

---

[9] Declining the Camelot route in the fall of 2011 did not reflect poorly on Plaintiff's reliability—as she remained available to work for ECSB—but accepting another job with the oil spill clean-up contractor did, as it shows that, once again, ECSB could not depend on Plaintiff to be available when it called her.

neither answered phone calls from the ECSB Transportation Department nor returned the calls, at least in part because she was "unavailable" to work for ECSB. In short, Plaintiff's history as a substitute bus driver for ECSB, commencing in 2006 and concluding in 2012, shows that she was frequently "unavailable" to work for ECSB, which—fairly, from the perspective of an employer who depends on the reasonable availability of substitute workers—made her less than reliable as an employee for ECSB's purposes.

Because ECSB has presented a nondiscriminatory reason for refusing to employ Plaintiff as a school bus operator or to endorse her employment by JHPA, Plaintiff must come forward with evidence showing this reason is a mere pretext for unlawful discrimination. She has failed to do so. The record is devoid of any evidence whatsoever of pretext for an underlying racially discriminatory motive.

In summary, as set forth above, the court concludes that Plaintiff has failed to establish all required elements of a prima facie case of hiring discrimination. Even assuming, *arguendo*, that she could make out a prima facie case, the court finds that ECSB satisfied its burden of providing a nondiscriminatory reason for its employment actions and that Plaintiff failed to show the reason was pretextual. Accordingly, summary judgment in Defendant's favor on Counts I and II of Plaintiff's amended complaint is due to be granted.

Summary judgment in Defendant's favor on Count IV, Plaintiff's Title VII retaliation claim, is also warranted. As an initial matter, Plaintiff's EEOC complaint against ECSB does not assert a claim of retaliation (*see* doc. 1 at 9). Plaintiff therefore failed to exhaust her remedies with the EEOC as to this claim prior to filing the instant action. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (plaintiff may sue for discrimination under Title VII only after she first exhausts her administrative remedies). Regardless, Plaintiff is unable to make out a prima facie case of retaliation. Such a claim requires showing that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Crawford, 529 F.3d at 970. Two types of protected activity can serve as the basis for a retaliation claim: (1) where the plaintiff opposed any practice that is an unlawful employment practice (the "opposition clause"); and (2) where the plaintiff "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter" (the "participation clause"). 42 U.S.C. § 2000e–3(a). "The opposition clause protects activity that occurs prior to the filing of a formal charge with the EEOC, such as filing an internal complaint of discrimination with an employer or informally complaining of discrimination to one's supervisors." Vinson v. Dept. of Corrections, Fla., 672 F. Supp. 2d 1247, 1254 (N.D. Fla. 2009) (citing Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001)). The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC. . . ." E.E.O.C. v. Total Sys. Servs., 221 F.3d 1171, 1174 (11th Cir. 2000). Plaintiff's assertion that she was retaliated against because she declined the Camelot route that was offered to her (doc. 68 at 6), implicates neither the opposition clause nor the participation clause, as required to establish a retaliation claim under Title VII. Thus, in addition to failing to exhaust her retaliation claim under Title VII, Plaintiff failed to state a prima facie case. Defendant is entitled to summary judgment in its favor on Count IV.

The court notes that Plaintiff has presented no evidence—not a shred—that even remotely suggests that ECSB's actions were racially discriminatory or retaliatory in nature. As noted above, this is true regardless of any facts Plaintiff claims are disputed, as such facts are not material to the outcome of this case. In other words, it matters not with respect to Plaintiff's ability to prevail on her racial discrimination and retaliation claims whether it was Mr. McKnight or Ms. Andrews who initiated their August 2012 phone call; precisely what Mr. McKnight said during that call or during his conversation with Plaintiff; exactly how long Plaintiff worked for ECSB; for precisely what reasons Plaintiff may have been unavailable to work; or whether or not, when Plaintiff was available to work, she performed satisfactorily or left her employment under a cloud of any sort. What does matter—and is undisputed—is the clear evidence of Plaintiff's availability, or unavailability, to work for ECSB. Specifically, Plaintiff made herself "unavailable" to work for ECSB on three occasions between 2006 and 2012—sometimes for extensive periods and, at least with respect to the final instance, without maintaining contact with ECSB despite its efforts to get in touch with her. That ECSB eventually found Plaintiff's recurrent "unavailability" to be unacceptable in a substitute bus driver—in other words, that it made her too "unreliable" for its needs such that it refused to continue to employ Plaintiff—does not, without more, amount to racial discrimination or retaliation. And Plaintiff has not come forward with any evidence of anything "more." Contrary to Plaintiff's

contention, proof of discrimination cannot be found simply in the fact that the persons involved in declaring her "unreliable" and refusing to employ her [Mr. McKnight, after speaking with Mrs. McKnight, Ms. Drew, Ms. Ball, and Ms. Walker] are white and Plaintiff is black (*see* docs. 29 at 6; 37-2 at 73). If race alone were proof of discrimination, virtually every claim of racial discrimination would succeed. Likewise, the other "proof" Plaintiff cites—the conversation she overheard between a white man and two white women about the Camelot route being given to "the two black girls" (*see* docs. 39 at 5–7; 68 at 42–43)—has absolutely no evidentiary value in support of Plaintiff's claims.

Next, the court considers Count III, Plaintiff's conspiracy claim pursuant to 42 U.S.C. §§ 1983 and 1985(3).[10] According to Plaintiff, Mr. McKnight, Mrs. McKnight, Ms. Drew, Ms. Ball, and Ms. Walker conspired together to "have [her] fired at [ECSB], and to prevent [her] hire in all Escambia County and surrounding areas and to have [her] black balled, exiled and ousted so that [she] would not be able to drive School Buses again" (doc. 29 at 8).

Plaintiff makes no allegations of conspiracy involving the only named and served Defendant, ECSB. Rather, she makes factual allegations involving only Defendant's employees. While local governmental bodies such as school boards, counties, and municipalities are persons within the meaning of § 1983 and can be held accountable for deprivations of federally protected rights, the liability of such bodies may not be based on the doctrine of respondeat superior. *See* Monell v. Department of Social Servs., 436 U.S. 658, 689, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989); Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003). A local governmental body, such as ECSB in this case, may be found liable only for acts for which it is actually responsible. *See* Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*). The fact that an employee of a local governmental body has violated a plaintiff's constitutional rights is insufficient to establish the employer's liability. *See* McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). Rather, the plaintiff must prove that: (1) her constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom at issue caused the constitutional violation. *Id.* In order to demonstrate a policy

---

[10] Plaintiff has not identified the specific subsection of § 1985, Conspiracy to interfere with civil rights, under which she proceeds. The court presumes, however, that it is subsection "(3), Depriving persons of rights or privileges[.]"

or custom, it is generally necessary to show a persistent and wide-spread practice; random acts or isolated incidents are insufficient. McDowell, 392 F.3d at 1290. As with § 1983, the theory of respondeat superior will not support liability under § 1985. *See* Swint v. City of Wadley, Ala., 5 F.3d 1435, 1451 (11th Cir. 1993), *rev'd on other grounds sub nom.* Swint v. Chambers County Comm'n, 514 U.S. 35, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995).

Here, Plaintiff has not established that she suffered a violation of any constitutional right. Nor has she alleged or shown that ECSB had a custom or policy—indeed, something more than a random act or isolated incident—that constituted deliberate indifference to her constitutional rights, much less that the custom or policy caused the violation[s]. McDowell, 392 F.3d at 1290. ECSB is entitled to summary judgment on Count III, Plaintiff's conspiracy claim pursuant to 42 U.S.C. §§ 1983 and 1985(3).

As previously noted, Plaintiff has not named as Defendants in this action the persons she claims conspired against her, ECSB employees Mr. McKnight, Mrs. McKnight, Ms. Drew, Ms. Ball, and Ms. Walker. Even if Plaintiff had named them as Defendants, however, any claim against them would fail because of the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.*; *accord* Denney v. City of Albany, 247 F.3d 1172, 1190–91 (11th Cir. 2001) (stating "the only two conspirators identified . . . are both City employees; no outsiders are alleged to be involved" and concluding intracorporate conspiracy doctrine barred plaintiffs' § 1985(3) conspiracy claims for deprivation of their equal protection rights). The doctrine applies to public entities such as state agencies and its personnel. *See* Wright v. Illinois Dept. of Children & Family Servs., 40 F.3d 1492, 1508 (7th Cir. 1994) (holding that intracorporate conspiracy doctrine applies not just to private entities but also to government agencies such as Illinois Department of Children and Family Services); *see also* Grider v. City of Auburn, Ala., 618 F.3d 1240, 1262–63 (11th Cir. 2010) (intracorporate conspiracy doctrine barred plaintiff's § 1983 conspiracy claims against police officers); Denney, 247 F.3d at 1190 (intracorporate

conspiracy doctrine applied to city and its personnel); <u>Rehberg v. Paulk</u>, 611 F.3d 828, 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); <u>Dickerson v. Alachua Cnty. Comm'n</u>, 200 F.3d 761, 767–68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1985(3) conspiracy claim for interference with his civil rights); <u>Chambliss v. Foote</u>, 562 F.2d 1015 (5th Cir. 1977) (affirming district court's summary judgment opinion applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials);[11] <u>Taylor v. Alabama</u>, 95 F. Supp. 2d 1297, 1317–18 (M.D. Ala. 2000) (doctrine of intracorporate conspiracy barred plaintiff's conspiracy claim against employees of state agency).

In her final federal claim, Count VI, Plaintiff contends that she was subjected to harassment in violation of 18 U.S.C. § 1514(c). This statute provides: "Whoever knowingly and intentionally violates or attempts to violate an order issued under [18 U.S.C. §1514, Civil action to restrain harassment of a victim or witness] shall be fined under this title, imprisoned not more than 5 years, or both." The cited provision is neither actionable by Plaintiff nor relevant to her case. Summary judgment should be granted to ECSB on Count VI.

Count V is Plaintiff's claim under state law for slander and defamation, brought pursuant to the court's supplemental jurisdiction. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant. *See* <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. <u>Baggett</u>, 117 F.3d at 1353 (citing <u>Palmer v. Hosp. Auth. of Randolph Cnty.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994); <u>Exec. Software N. Am. v. United States Dist. Court</u>, 15 F.3d 1484, 1493 (9th Cir. 1994); <u>New England Co. v. Bank of Gwinnett Cnty.</u>, 891 F. Supp. 1569,

---

[11] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

1578 (N.D. Ga. 1995); <u>Fallin v. Mindis Metals, Inc.</u>, 865 F. Supp. 834, 841 (N.D. Ga. 1994)).
Taking these factors into account in this case, the undersigned concludes that Blackmon's state law
claims should be dismissed to permit her to pursue them in a more appropriate forum. The state
court is best equipped to research and rule on matters of state law, and comity would suggest that
it should be given the opportunity to do so.

V.    CONCLUSION

       For all of the foregoing reasons, the court recommends that Defendant Escambia County
School Board be granted summary judgment in its favor. Counts I through IV and Count VI of the
amended complaint should be dismissed with prejudice. The court further recommends that Count
V of the amended complaint, Plaintiff's state law claims for defamation and slander, be dismissed
without prejudice.

       Accordingly, it is respectfully **RECOMMENDED**:

       1.      That Defendant Escambia County School Board's motion for summary judgment
(doc. 35) be **GRANTED**. Dismissal of Counts I through IV and Count VI of the amended complaint
should be with prejudice.

       2.      That Plaintiff's state law claims, asserted in Count V of the amended complaint, be
**DISMISSED** without prejudice to her right to pursue them in state court.

       3.      That the clerk be directed to enter judgment in Defendant Escambia County School
Board's favor and close this case.

       At Pensacola, Florida this 20th day of December 2013.


                                    /s/ Elizabeth M. Timothy
                                    **ELIZABETH M. TIMOTHY**
                                    **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).